**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SALIK ABDULLAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-cv-0920-NJR |
| | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| DR. LOUIS SCHICKER, | ) | |
| VIPEN SHAH, | ) | |
| MARK SCOTT, | ) | |
| CHRISTINE BROWN, | ) | |
| ANGEL RECTOR, | ) | |
| JACQUELINE LASHBROOK, | ) | |
| MICHAEL EDWARDS, and | ) | |
| THOMAS SPILLER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Salik Abdullah is currently incarcerated at the Pinckneyville Correctional Center in Pinckneyville, Illinois. (Doc. 19 at 1.) Proceeding *pro se*, Abdullah has filed a complaint under 42 U.S.C. § 1983, alleging that some of the medical staff at Pinckneyville and the private entity that employs them all failed to treat some of Abdullah's medical ailments. (*Id.* at 6-11.) Abdullah also suggests that prison officials at Pinckneyville denied him access to certain services at the prison based on his medical handicaps. (*Id.* at 11-13.) Abdullah seeks compensatory damages, punitive damages, and a variety of types of injunctive relief. (*Id.* at 18.)

This matter is now before the Court for a review of Abdullah's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the court "shall identify cognizable claims or dismiss the complaint, or

any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim" or if it "seeks monetary relief from a defendant who is immune."

### Background

According to the complaint, Abdullah has been incarcerated at Pinckneyville since at least 2015. (Doc. 1 at 7.) He suffers from a number of maladies, including rheumatoid arthritis, anterior uveitis (a type of inflammation of the middle layer of the eye), ankylosing spondylitis (a form of long-term arthritis that causes spinal mobility problems), and hypertension. (*Id.* at 6-7.) Abdullah saw Dr. Shah at Pinckneyville for these problems from at least 2015 until late 2015 or early 2016, and Abdullah claims that Dr. Shah did not treat him properly during that time period. (*Id.* at 7-10.) Per Abdullah, Shah failed to refer Abdullah to specialists despite his worsening arthritis and hypertension problems, continued with ineffective pain medication treatment until late 2015, failed to provide Abdullah with a front cuff permit or access to a physical therapist despite his need for one given his arthritis, made him go through sick call and pay a co-payment for pain medication refills, gave him so much "hypertension medication" as to cause Abdullah's blood-related symptoms to worsen and then failed to treat the ongoing "blood thickening" complications, and failed to place Abdullah on the physically challenged gym line or provide him with access to "one-man" showers despite his need for both given his eye- and arthritis-related problems. (*Id.*) During his treatment with Dr. Shah, Abdullah also claims that he contacted Nurse Practitioner Rector and Administrator Brown regarding his various issues with Dr. Shah but received no help from them, either. (*Id.* at 7-8.)

After Dr. Shah retired, Dr. Mark Scott took over for Dr. Shah at Pinckneyville, and Abdullah claims that he had problems with Dr. Scott as well. (*Id.* at 10-12.) In February 2016, Abdullah saw Dr. Scott for worsening high blood pressure. (*Id.* at 10-11.) According to Abdullah, Dr. Scott refused to listen to all of his medical problems. (*Id.*) Dr. Scott instead insisted that Abdullah answer his questions in a yes-or-no fashion, and based on those answers Dr. Scott placed Abdullah on Norvasc and ordered blood pressure testing. (*Id.*) While on that drug, Abdullah had chest pains and his blood

pressure remained high. (*Id.*) Abdullah saw Dr. Scott again in late March 2016. Dr. Scott determined during that visit that Abdullah's chest pains were simple indigestion, discontinued some of Abdullah's pain medication, and told him to take four aspirin daily instead. (*Id.* at 11.) Abdullah complained about having one of his pain medications discontinued, and Dr. Scott told him that he could have either his pain medication or his hypertension medication, but not both. (*Id.*) Abdullah says he was "too shocked" to complain any further, and the visit with Dr. Scott ended. (*Id.*) Dr. Scott has since refused to review Abdullah's medical files, causing the "doubling and redoubling of medications" and the repeat use of medications "that did not help for the condition prescribed." (*Id.* at 12.)

Throughout his care with Dr. Shah, Abdullah went on a few hunger strikes to protest his medical treatment. (*Id.* at 7.) The longest ran for twenty-one days, and during that strike Abdullah says he was visited by the Warden and Assistant Warden of Pinckneyville. (*Id.* at 11-12.) The two asked Abdullah what it would take to end the hunger strike, and Abdullah said he wanted a one-man cell, a job, and proper medical care. (*Id.*) The two officials bristled at the notion of providing Abdullah a single-man cell, but did agree, at Abdullah's request, to remove him from a four-man cell for physically challenged inmates and place him instead with an older, non-gang-affiliated inmate. (*Id.*) That cellmate arrangement lasted until Warden Lashbrook took over as the chief administrative officer for Pinckneyville. (*Id.* at 12.) Lashbrook has refused to allow Abdullah to "pick [his] own cell partner," and that refusal, says Abdullah, has led to his cell placement with "gang-bangers and psyche patients." (*Id.*)

Over and above all of these problems, Abdullah also claims that, in October 2015, two officers confiscated one set of telescopic glasses that he needs to perform day-to-day tasks given his eye condition. (*Id.* at 13.) After the glasses were confiscated, Abdullah saw the eye doctor again, and a new pair of telescopic glasses and a pair of "photogrey" glasses were ordered. (*Id.*) He did not receive either set of glasses for "several months." (*Id.*) When Abdullah finally received the photogrey

glasses, they were not properly configured, so another set was ordered, which Abdullah claims he still has not received. (*Id.*) As for the telescopic glasses, Abdullah received a new set of those glasses some time in 2016, but he alleges that they do not work properly, and he still cannot use them to perform many tasks to this day. (*Id.*)

In light of all of these problems, Abdullah claims that he attempted to exhaust his administrative remedies concerning the unresolved issues caused by his medical conditions. (*Id.* at 5.) Unsatisfied with the prison's response, he filed suit in this Court on August 16, 2016.

<u>Discussion</u>

The Court begins its § 1915A review with a note about the parties at issue in this case. Throughout his complaint, Abdullah refers to the conduct of some individuals not named in his caption or his defendant list—he says that he complained to Nurse "Tracey" about his blood problems, that then-Warden Davis and then-Assistant Warden Dintelman had some involvement in his care when his cell arrangements were adjusted, and that Officers Smith and Hagene took his telescopic glasses away. Because these parties are not listed in the caption by name or by Doe designation, they will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). In addition, two of the persons whom Abdullah has named as defendants, Louis Schicker and Michael Edwards, are only listed in the caption—there is nothing substantive in the complaint to give each one notice as to how they were involved in Abdullah's care or how they violated his rights. A plaintiff cannot state a claim against a defendant merely by including a name in the caption, *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998), so these defendants must be dismissed without prejudice, too.

Turning to the substantive allegations in Abdullah's complaint, the Court finds it proper to divide the claims in the complaint into the following counts. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

**COUNT 1:** Starting in 2015 or before and ending in early 2016 or late 2015, Dr. Shah failed to properly treat Abdullah's arthritis, eye, and blood-related conditions in violation of Abdullah's Eighth Amendment rights.

**COUNT 2:** In 2016, Dr. Scott failed to properly treat Abdullah's arthritis- and blood-related conditions, in violation of Abdullah's Eighth Amendment rights.

**COUNT 3:** Rector and Brown violated Abdullah's Eighth Amendment rights by rejecting requests or denying grievances that he filed concerning his care.

**COUNT 4:** Dr. Shah and Brown violated Abdullah's Eighth Amendment rights when they told him to go through call procedures to renew certain medications.

**COUNT 5:** Wexford Health Sources violated Abdullah's Eighth Amendment rights concerning his treatment at Pinckneyville.

**COUNT 6:** Warden Lashbrook and Assistant Warden Spiller violated Abdullah's Eighth Amendment rights when they discontinued a cellmate arrangement where Abdullah was only housed with certain types of inmates.

**COUNT 7:** Unspecified defendants have violated Abdullah's rights under the Americans with Disabilities Act and the Rehabilitation Act by depriving him of access to his glasses, depriving him of access to a "one-man shower," and depriving him of access to a "one-man" cell.

Abdullah's complaint begins with allegations linked to Dr. Shah's medical care, so the Court will start there (**Count 1**). The Eighth Amendment of the United States Constitution bars the cruel and unusual punishment of prisoners, and prison officials violate this proscription "when they display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). To bring an Eighth Amendment claim against a physician, a prisoner has two hurdles to clear: he must first show that his medical condition is "objectively" serious, and he must then allege that the medical professional acted with the requisite state of mind. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).

For screening purposes, Abdullah has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Abdullah's eye, arthritis, and blood pressure-related medical problems qualify as serious, at least at this preliminary stage of the case. *See id.* at 1372 n.7.

Abdullah's complaint also sufficiently alleges that Dr. Shah acted with deliberate indifference at the screening stage. To be sure, "medical malpractice, negligence, or even gross negligence" by a physician "does not equate to deliberate indifference," *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). Because deliberate indifference is such a demanding state of mind requirement, there is no constitutional violation merely because a physician's treatments ultimately prove ineffective, *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008), nor is there a constitutional violation solely because a doctor refuses to give a prisoner the exact treatment he wishes, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). That said, deliberate indifference can exist if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). It can also exist when an official fails to provide any treatment for a medical condition, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), when an official persists with ineffective treatment for a medical problem, *Greeno*, 414 F.3d at 655, or when an official delays medical treatment or needlessly prolongs a prisoner's pain, *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). While Abdullah's complaint is sometimes light on specific dates and specific content concerning Dr. Shah's treatment, when the complaint is construed liberally and all inferences are

drawn in Abdullah's favor, Abdullah says that Dr. Shah pressed forward with ineffective treatment for his arthritis and hypertensive problems rather than considering a referral to a specialist, that he continued with ineffective pain medications for his arthritis until late 2015 despite knowing that Abdullah was in pain, that he did not provide certain jail-related permits that were necessary given Abdullah's ailments, and that he failed to treat some of Abdullah's blood-related complications. Those allegations, taken together, are just enough to give Dr. Shah notice of his claim and to state a claim for deliberate indifference against Dr. Shah at this phase, so **Count 1** will proceed.

Abdullah also claims that Dr. Scott violated his Eighth Amendment rights when he took over Abdullah's arthritis and blood-related care after Dr. Shah's retirement in late 2015 or early 2016 (**Count 2**). As the Court already said, Abdullah's arthritis and blood problems all qualify as objectively serious at this stage of the case, so the only question is whether Abdullah has alleged that Dr. Scott was deliberately indifferent to those conditions. Abdullah does not include much global detail concerning what Dr. Scott did or did not do concerning his care, but construing the complaint in Abdullah's favor, the Court is of the view that Abdullah has stated just enough to put forth a claim against him for now. Abdullah's complaint indicates that Dr. Scott may have given Abdullah an ultimatum that he could either receive treatment for his pain or for his hypertension but not both. That ultimatum may have been necessary to avoid interactions between prescriptions or it may have been vindictive. If it qualified as the latter, and some other allegations in the complaint suggest vindictiveness here, Dr. Scott may have behaved with the requisite state of mind to be liable under the Eighth Amendment. In addition, when all of the inferences in the complaint are construed in Abdullah's favor, Abdullah says that Dr. Scott has continued to prescribe ineffective treatment for his blood- and arthritis-related problems because he does not want to review his records. That, too, could show indifference on Dr. Scott's part. Further factual development is necessary, so **Count 2** may proceed.

Abdullah goes on to allege that Nurse Practitioner Rector and Health Care Unit Administrator Brown also violated the Eighth Amendment when they rejected grievances or other correspondence concerning Dr. Shah's treatment (**Count 3**). This claim fails at the gate, as the denial of a grievance or the rejection of a letter by a prison official, standing alone, usually is not enough to violate the United States Constitution. *See, e.g., George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). It is true that a prison official might be liable if an inmate tells the official of an ongoing medical problem that is not being treated and the official does nothing, *see Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015), but Abdullah's allegations concerning what he told Rector and Brown are too flimsy to state that kind of claim. Abdullah only says that he wrote a letter to Rector about his "problems" and that she would not answer his "calls" when she was walking down the hospital hall; he does not say, in any developed sense, what he told her in the letter or what he said to her in his call requests about his medical issues. As for Administrator Brown, Abdullah says he sent several grievances to her about his care, but aside from the grievances concerning his co-pay requirements, which the Court will discuss in a moment, Abdullah says nothing about what was in those grievances. Without laying out what he told Rector and Brown about his medical ailments, Abdullah cannot state a claim for deliberate indifference. **Count 3** must be dismissed without prejudice.

Abdullah next claims that Dr. Shah violated his rights by telling him that he would have to proceed through sick call and pay a fee to renew his pain prescriptions, and that Administrator Brown joined in this violation when she refused to intervene and remedy Dr. Shah's directive (**Count 4**). This claim, like Abdullah's last one, must go. Prisons are free to set rules and procedures for obtaining medical care, and an inmate's constitutional rights are not violated merely because a prison

assesses a fee to secure those services. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012). Abdullah does not allege that he lacked the money to pay the fee or that he was denied care because he had no funds, so **Count 4** must be dismissed without prejudice.

Abdullah goes on to suggest that Wexford Health Sources also violated his constitutional rights, seemingly by virtue of the failings of Dr. Shah, Dr. Scott, and others (**Count 5**). The problem with this claim is that Abdullah says nothing about why Wexford Health Sources itself is liable. Wexford cannot be liable merely because Dr. Shah or Dr. Scott may have worked for Wexford at the time that they provided care to Abdullah—Section 1983 requires personal liability on the part of each defendant named in a case, so the doctrine of *respondeat superior* is inapplicable in the constitutional tort context, including for private corporations like Wexford. *See Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014). Rather, Abdullah can only state a claim against Wexford Health Sources if he alleges that Wexford had an unconstitutional policy or practice that played a role in his constitutional violation. *Olive v. Wexford Corp.*, 494 F. App'x 671, 672-73 (7th Cir. 2012). Abdullah has made no developed allegations on that front—he does not even mention Wexford once in the narrative of his complaint—and that omission means that **Count 5** must be dismissed without prejudice.

Over and above his claims directed at the medical personnel at Pinckneyville, Abdullah also seems to claim that Warden Lashbrook and Assistant Warden Spiller were also deliberately indifferent to his medical needs, as one or both of them refused to continue to allow him to be placed with a certain type of docile cellmate at Pinckneyville (**Count 6**). This claim, too, must be dismissed without prejudice, because the little that is pled in the complaint about Lashbrook and Spiller does not suggest deliberate indifference on their parts. Abdullah does not flesh out which of his medical conditions necessitated a one-man cell at Pinckneyville, nor does he lay out, in any developed sense, what he said to Lashbrook and Spiller concerning his need for that kind of cell. He does claim that he told Lashbrook and Spiller that his blood pressure increased and he suffered some anxiety and chest

pain at the idea that he would no longer be placed with the inmate of his choice, but Abdullah has not alleged that he told Lashbrook and Spiller that he was not receiving treatment for those two issues at the time he experienced those problems, and prison officials are entitled to defer to medical staff on medical issues. *See Askew v. Davis*, 613 F. App'x 544, 548 (7th Cir. 2015). In addition, while Abdullah suggests that he still needs a one-man cell because he is unable to protect himself from inmates, he has not offered any allegations concerning recent dangers at Pinckneyville. At the end of the day, Abdullah has not alleged that Lashbrook and Spiller knew of the scope of his medical problems but were indifferent to them by placing him in a new cell, so **Count 6** must be dismissed without prejudice.

While Abdullah does not reference either statute in his complaint, the Court would be remiss not to read his complaint as asserting claims under the Rehabilitation Act and the Americans with Disabilities Act, as Abdullah references his ongoing need for a one-man shower permit, for proper glasses, and a one-man cell in light of his medical issues (**Count 7**). To state a claim under the Americans with Disabilities Act or the Rehabilitation Act, a plaintiff must allege that he suffers from a disability, that he is qualified to participate in a prison program, activity, or service, and that he was excluded from participating in a program or denied the benefit of a service based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act also requires a plaintiff to allege that the program in which he was involved received federal financial assistance, but that is the case for all state prisons, and the element can typically be assumed in *pro se* cases. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). A litigant cannot sue employees of the Department of Corrections individually under either federal statute—only suits against the state agency are viable. *Id*.

Abdullah alleges that he has a great deal of difficulty with seeing given his anterior uveitis condition, and that is sufficient to put forth a disability under both federal statutes at this point in the case. In addition, Abdullah suggests, throughout the narrative in his complaint, that he has been

unable to take proper showers given his propensity for bumping into other inmates and that he has been unable to read or engage in other sight-related activities at the prison because he does not have access to photogrey glasses, properly-functioning telescopic glasses, or other accommodations. At this stage, those allegations are sufficient to support a potential claim for deprivation of shower and other sight-related services under the federal disability statutes. That said, Abdullah has not included enough allegations to support a federal disability claim concerning his housing services at the prison. Abdullah says little to nothing about his current housing situation at Pinckneyville, the current dangers he faces in that housing, and what disabilities he suffers that necessitate placement in a one-man environment, meaning that he has not alleged that he has been functionally excluded from housing services at the prison. Accordingly, **Count 7** can proceed as it relates to Abdullah's need for shower- and sight-related services, but it is dismissed without prejudice as it concerns Abdullah's housing. Once more, this claim will only proceed against the Illinois Department of Corrections in its official capacity.

One closing note is in order concerning the remaining requests for injunctive relief contained in Abdullah's complaint. Abdullah seeks several types of injunctive relief in his complaint—among other things, he wants glasses and other sight-related relief, a shower permit, an order directing prison officials to set up joint-replacement surgery, an order directing staff to refer him to hypertension and arthritis specialists, and an order directing officials to allow him more regular access to the prison gym for therapy purposes. Abdullah should know that the Court previously construed these requests for relief as requests for permanent injunctions rather than preliminary ones, as the preliminary request in the complaint—which was denied for want of specific allegations concerning danger—seemed to concern a "no retaliation" order alone. Many of these permanent requests concern Abdullah's shower- and sight-related needs, and the Illinois Department of Corrections should be an adequate defendant to coordinate that relief if it is ordered by the Court. That said, given that injunctive relief might also be ordered concerning Abdullah's medical care, the

two deliberate indifference claims against Dr. Shah and Dr. Scott will also proceed as to Warden Lashbrook, but only in her official capacity so that she can respond to injunctive orders. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **SHAH**, and **COUNT 2** shall **PROCEED** against **SCOTT**. These counts shall also proceed against **WARDEN LASHBROOK**, but only in her official capacity for the purpose of responding to any medical injunctive orders issued by the Court.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 6** is **DISMISSED without prejudice**. Because there are no further claims against them, **WEXFORD HEALTH SOURCES**, **SCHICKER**, **BROWN**, **RECTOR**, **EDWARDS**, and **SPILLER** are **DISMISSED without prejudice** from this action.

**IT IS FURTHER ORDERED** that **COUNT 7** shall **PROCEED** against the **ILLINOIS DEPARTMENT OF CORRECTIONS**, but only as it concerns Abdullah's need for shower- and sight-related services at the prison. **COUNT 7** is **DISMISSED without prejudice** as it concerns Abdullah's need for housing-related services at the prison. The **CLERK** is **DIRECTED** to **ADD** the **ILLINOIS DEPARTMENT OF CORRECTIONS** as a defendant.

**IT IS FURTHER ORDERED** that Abdullah's motion for service of process (Doc. 4) is **GRANTED**. The Clerk of Court shall prepare for Defendants **SHAH**, **SCOTT**, **LASHBROOK**, and the **ILLINOIS DEPARTMENT OF CORRECTIONS**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each

Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending motion for recruitment of counsel (Doc. 3) is **REFERRED** to Magistrate Judge Wilkerson for consideration.

Further, this entire matter is **REFERRED** to Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all parties consent.*

**IT IS FURTHER ORDERED** that Abdullah's pending motion for status (Doc. 11) is **GRANTED**. This order suffices to update him on the status of service, which is now in progress. The defendants' answers will be submitted in a timeline consistent with the Federal Rules of Civil Procedure once service is affected. No further action is needed by Abdullah concerning the certificate of service he submitted with his complaint. His motion for counsel is now pending before Magistrate Judge Wilkerson, and it will be decided in due course.

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  November 4, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**