**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| SALIK ABDULLAH, #C82430, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  16-cv-920-NJR |
| | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| DR. LOUIS SCHICKER, VIPEN SHAH, | ) | |
| MARK SCOTT, CHRISTINE BROWN, | ) | |
| ANGEL RECTOR, JACQUELINE | ) | |
| LASHBROOK, MICHAEL EDWARDS, | ) | |
| and THOMAS SPILLER, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF HIS AMENDED MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

COMES NOW Plaintiff Salik N. Abdullah ("Plaintiff" or "Abdullah"), by and through his attorneys, and submits this memorandum of law in support of his Amended Motion for Preliminary Injunctive Relief:

**INTRODUCTION**

Plaintiff is a state prisoner who was housed at Pinckneyville Correctional Center ("Pinckneyville") from 2008 through June of 2017, when he was transferred to Dixon Correctional Center ("Dixon").

While still at Pinckneyville, Plaintiff filed his initial Motion for Preliminary Injunctive Relief, which sought to compel Defendants to provide Plaintiff with necessary medical treatment for his serious medical needs, and likewise sought to compel Defendants to provide Plaintiff with reasonable accommodations that Defendants had denied him for years.  This Motion further demonstrated that Plaintiff's medical conditions would continue to worsen without the requested injunctive relief, and that he would be unable to participate in multiple daily life activities

1

without the requested accommodations.

Since transferring to Dixon, Plaintiff has continued to suffer from the same type of deliberate indifference to his serious medical needs that he suffered at Pinckneyville. Defendants have likewise continued to deny him access to reasonable accommodations for his many disabilities, despite multiple requests. Specifically, Defendants Illinois Department of Corrections ("IDOC") and Wexford Health Sources ("Wexford") have continued to deny him necessary access to a Rheumatologist, have continued to deny him access to eyeglasses and other visual aids that have been prescribed by a low-vision specialist and approved by their own Medical Director, have continued to deny his requests for access to an ADA-compliant gymnasium or other method of completing the exercises necessary to prevent his medical conditions from continuing to worsen, and have continued to deny him access to an ADA-compliant or one-man cell.

As discussed in Plaintiff's initial Motion, Plaintiff believes that the conduct complained of has continued after his transfer due to system-wide cost-saving policies promulgated by the IDOC and Wexford. Such policies and practices have resulted in significant and ongoing violations of Plaintiff's rights under the Eighth Amendment and the Americans with Disabilities Act. Without the requested injunctive relief, Plaintiff will remain largely unable to see or participate in multiple other daily activities due to his visual impairments. He will also continue to experience increased and unnecessary pain, mobility issues, and deterioration of his shoulders and back as a result of being unable to conduct his recommended exercises, being unable to see a Rheumatologist and benefit from that Rheumatologist's recommendations, and being unable to obtain an ADA-compliant or one-man cell that would allow him to complete his exercises and avoid the high risk of serious physical injury in the event of an altercation with a roommate. For all of these reasons and the reasons discussed below, injunctive relief is necessary.

1717817.2

## FACTUAL BACKGROUND

Plaintiff has presented facts and evidence regarding his serious medical conditions to this Court on numerous occasions, including in his Amended Motion for Preliminary Injunction (Docs. 85 and 86).  Plaintiff suffers from Rheumatoid Arthritis, Ankylosing Spondylitis, Anterior Uveitis, chronic hypertension and high cholesterol. Plaintiff has also been declared legally blind.

Plaintiff's repeated requests for treatment, and the subsequent denials of those requests are also described in detail in Plaintiff's Amended Motion for Preliminary Injunction and supporting materials. (Docs. 85 and 86). As noted, Plaintiff grieved the denial of necessary medical care and accommodations on multiple occasions at Pinckneyville, but the IDOC and Wexford continued with the same ineffective medical treatment and continued to deny him reasonable accommodations. Plaintiff's prior Amended Motion for Preliminary Injunction (Docs. 85 – 86) was stayed when Plaintiff was transferred to Dixon in June of 2017, so that Plaintiff could ascertain whether the objectionable conditions he experienced at Pinckneyville would continue at Dixon.

Since his transfer to Dixon in June of 2017, the IDOC and Wexford have continued to deny Plaintiff reasonable accommodations for his disabilities and have continued to demonstrate deliberate indifference to his serious medical needs due to system-wide IDOC and Wexford policies designed to minimize cost even at the expense of necessary medical care and accommodations.  See Affidavit of Joann Reagan, attached hereto as Exhibit 1.  Specifically, Plaintiff has still been denied referral to a rheumatologist despite having been approved for a referral by the Dixon's Medical Director, Dr. Zahtz. See Exhibit 1, ¶ 18.  See also, Affidavit of Plaintiff Salik Abdullah, attached hereto and marked Exhibit 2, ¶ 7. Absent a court order requiring that Plaintiff be referred to the rheumatologist as approved, Plaintiff's conditions will continue to worsen, and he will continue to experience severe pain and increasingly limited

mobility as a result of his ankylosing spondylitis and rheumatoid arthritis. Related, since his transfer to Dixon, Plaintiff has still been denied access to an ADA-compliant gymnasium or alternative means to perform previously-prescribed strengthening exercises that would prevent further deterioration of his rheumatoid arthritis and ankylosing spondylitis.

Furthermore, Plaintiff has been denied telescopic eyeglasses and other assistive devices, despite having been prescribed the same by the IDOC's own low-vision specialist. See Exhibit 1, ¶ 12; Exhibit 2, ¶ 5. Because of his anterior uveitis, Plaintiff has been declared legally blind and without the aid of assistive devices, he is unable to see, read, study and perform other basic activities of daily life. Given the IDOC's history in denying Plaintiff the visual aids he requires, it is apparent that Plaintiff will not receive adequate medical care or reasonable accommodations absent a court order.

Finally, Plaintiff has continually been denied access to an ADA-compliant or single-man cell, which he requires to safely ambulate in his cell and to prevent serious injury that would most certainly result if a cellmate were to attack him.  As discussed in his Amended Motion, Plaintiff is unable to defend himself against attack due to his serious medical conditions. Doc. 86. at p. 4, 12.  In addition, based on the retaliation he has previously experienced at Pinckneyville, Plaintiff believes that the IDOC will continue to give him to unsafe cell assignments at Dixon. Defendants' ongoing refusal to provide Plaintiff with visual aids likewise necessitates a one-man cell to prevent Plaintiff from running into his cellmate, whom he can barely see, and thereby causing an altercation that would have devastating consequences considering the nature and extent of Plaintiff's many medical conditions.

For these reasons, and each of the reasons discussed herein, injunctive relief is appropriate and necessary to ensure that Plaintiff receives the accepted standards of medical care that the IDOC and Wexford have continually denied him.

1717817.2

## II.    PRELIMINARY INJUNCTION STANDARD.

Based on the above-stated facts and the foregoing principles of law, Plaintiff has a clear and ascertainable right to a preliminary injunction in his present lawsuit.   A preliminary injunction is proper when a plaintiff establishes:  1) that he has a reasonable likelihood of success of the merits of his case; 2) that he has no adequate remedy at law; and 3) that he will suffer irreparable harm absent the injunction.  *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012).   Once these threshold requirements are met, a court weighs the balance of harms to the parties if the injunction is either granted or denied, and then "evaluates the effect of an injunction on the public interest." *Id*. The moving party's strong likelihood of success on the merits affects a court's consideration of the balance of harms, in that "the more likely it is that [the moving party] will win on the merits, the less the balance of harms need weight in its favor."  *Id*. (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008)).   Further, under the Prison Litigation Reform Act (PLRA), a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(1)(2).

## III.    PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION.

As an initial matter, Plaintiff's claim for preliminary injunctive relief is not mooted by his transfer to from Pinckneyville to Dixon. When a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, becomes moot.  Lehn v. Holmes, 364 F.3d 862, 871 (7th Cir. 2004). However, when a prisoner seeks relief from a condition that stems from a system-wide policy, and is then transferred to a different facility within the same prison system where the objectionable policy also applies, the prisoner's claims for injunctive relief are still viable.  Id. at

872.  The Seventh Circuit reversed the lower court's decision, holding that a prisoner's claim for injunctive relief is not mooted by a transfer to another facility so long as the prisoner claims that a system-wide policy is responsible for the conduct at issue and so long as the conduct at issue continues at the new facility.  Id. at 872; see also West v. Grams, 607 Fed.Appx. 561, 565-567 (7th Cir. 2015) (same).

The same circumstances discussed in Lehn are present in this case.  Plaintiff expressly alleges in his Amended Complaint that Defendant Wexford maintains a policy or practice of favoring cost-savings over providing appropriate and necessary medical treatment to IDOC inmates.  See Doc. 110, Amended Complaint, ¶¶ 132-135.  Plaintiff further alleges that Defendant Wexford is incentivized to do so by its contract with the IDOC, which provides a flat fee payment to Wexford for each inmate serviced as opposed to providing payment based on the level of medical care provided to each inmate.  Id.  Finally, Plaintiff alleges that these challenged policies and practices have caused Defendants to:  repeatedly prescribe the same ineffective pain medications to him, refuse to prescribe more effective pain medications due to the cost of those medications, refuse to refer Plaintiff to necessary specialists, and refuse to provide Plaintiff with recommended medical treatment, including but not limited to his previously prescribed telescoping eyeglasses and appropriately tinted lenses.  Id.  Plaintiff likewise alleges that the IDOC repeatedly fails to make reasonable accommodations for its disabled inmates, including Plaintiff, irrespective of the IDOC institution at which these disabled inmates are housed.  Id. at ¶¶ 146-153.  As such, Plaintiff has sufficiently alleged that the conduct at issue is not specific to Pinckneyville, but is rather the product of a system-wide policy and/or practice utilized by Defendants Wexford and IDOC at all facilities they operate.  In addition, much of the same conduct alleged has continued to occur at Dixon because Defendants Wexford and IDOC operate that facility and utilize the same objectionable policy of favoring cost-savings over appropriate

6

medical care and reasonable accommodations.  Accordingly, injunctive relief is appropriate and Plaintiff's claims for injunctive relief are not mooted by his transfer to Dixon.

### A.  Plaintiff is Likely to Succeed on the Merits of his Eighth Amendment Claim for Deliberate Indifference to a Serious Medical Need.

The Eighth Amendment's prohibition against cruel and unusual punishment requires the government  to provide medical care for incarcerated individuals and it "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'"  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.2d 816, 828 (7th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  To prevail on an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff need only prove:  1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition.  *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)).  Deliberate indifference occurs when an official "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk."  *Id*.  A party shows likelihood of success on the merits where he has "a greater than negligible chance of winning."  *AM General Corp. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2001).

1.     *Plaintiff's Rheumatoid Arthritis, Ankylosing Spondylitis, Anterior Uveitis, and Hypertension are Objectively Serious Medical Conditions.*

A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Further, "there is no requirement that a prisoner provide "objective" evidence of his pain and suffering – self reporting is often the only indicator a doctor has of a patient's condition."  *Id*. at 655.  A serious medical condition need not necessarily be life-threating, but rather is a condition that "would result in further significant injury or unnecessary wanton infliction of pain if not treated." *Gayton v. McCoy*, 593

F.3d 610, 620 (7th Cir. 2010).  Some examples of serious medical conditions include: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment; the presence of a medical condition that substantially affects an individual's daily activities; or the existence of chronic and substantial pain."  *Hayes v.* Snyder, 546 F.3d 516, 522-523 (7th Cir. 2008) (citing *Gutierrez v.* Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)).

Each one of Plaintiff's conditions is objectively serious.  Rheumatoid arthritis is an autoimmune disorder which causes the body to mistakenly attack its own tissues. *Rheumatoid Arthritis*, Mayo Clinic, available at http://www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/home/ovc-20197388 (last accessed March 14, 2017).  The swelling of the lining of the joints is very painful, and can have long-term permanent effects including bone erosion and joint deformity.  *Id.*  It is not surprising that courts have consistently recognized rheumatoid arthritis as a serious medical need. *See Ingersoll v. Shah*, 2016 WL 6083377, *2 (S.D. Ill. Oct. 18, 2016); *Norfleet v. Walker*, 439 F.3d 392, 395 (7th Cir. 2006); *Arnett* 658 F.3d at 750 (parties did not dispute that inmate's rheumatoid arthritis qualified as a serious medical condition).

Plaintiff also suffers from anylosing spondylitis, which is a painful inflammatory disease which causes vertebrae of the spine to fuse, resulting in a hunched-over posture that can cause difficulty breathing.  *Ankylosing Spondylitis*, Mayo Clinic, available at http://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/home/ovc-20261048 (last accessed March 14, 2017).  Inflammation related to ankylosing spondylitis can also affect other parts of the body, and commonly affect an individual's eyes.  *Id.*  Plaintiff's Anterior Uveitis has characteristic symptoms including eye pain, light sensitivity, blurred vision and decreased vision. *Uveitis, Symptoms*, Mayo Clinic, available at http://www.mayoclinic.org/diseases-conditions/uveitis/basics/symptoms/con-20026602 (last accessed March 14, 2017). Uveitis has likewise been recognized as a serious medical condition. *Gebrai v. Shah*, 2016 WL 4366593 *5

8

1717817.2

(S.D. Ill. August 16, 2016) (finding that Uveitis and related vision impairment "clearly required medical attention" and therefore satisfied the "objective component of an Eighth Amendment claim.")

Plaintiff likewise suffers from hypertension. While hypertension can be managed, the higher a person's blood pressure and the longer it goes uncontrolled, the greater the damage that will be caused. *High blood pressure (hypertension)*, Mayo Clinic, available at http://www.mayoclinic.org/diseases-conditions/high-blood-pressure/basics/complications/con-20019580 (last accessed April 5, 2018).   The Seventh Circuit has not only recognized hypertension as an objectively serious medical condition; it has referred to it as the "silent killer" that often causes heart attacks and strokes when left untreated.  *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016) (recognizing hypertension/high cholesterol as an objectively serious medical condition and observing that "high cholesterol, known as "the silent killer," can progress over an extended period of time without apparent side effects before eventually reaching a crisis point and causing potentially deadly health problems, including heart attacks and stroke. Custodians are not excused from ensuring adequate treatment for inmates with chronic or degenerative conditions simply because any resulting harms may remain latent or have not yet reached the point of causing acute or life-threatening injuries.")  Plaintiff has demonstrated that each of his medical conditions is objectively serious.

> 2.     *Defendants Have Acted with Deliberate Indifference to Plaintiff's Serious Medical Needs.*

Examples of deliberate indifference cited by the Seventh Circuit include administering "blatantly inappropriate" treatment, acting "contrary to the recommendation of specialists," or delaying an inmate's treatment "for non-medical reasons, thereby exacerbating his pain and suffering." *Id*. at 777 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)); *Arnett*, 658 F.3d at 753; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).  "The Eighth Amendment

9

protects a detainee not only from deliberate indifference to his or her *current* serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to *future* health." *Board v. Farnham*, 394 F.3d 469, 479 (7th Cir. 2005) (emphasis in original) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846-47 (7th Cir. 1999).

A plaintiff's receipt of "some" treatment will not defeat a claim for deliberate indifference. *Greeno*, 414 F.3d at 654. "Deliberate indifference can exist if prison officials refuse to provide a prisoner with access to doctors or unreasonably delay a prisoner's treatment such that it prolongs his suffering. Continuing a treatment known to be ineffective can also constitute deliberate indifference." *Foster v. Ghosh*, 4 F.Supp.3d 974, 983 (N.D. Ill. 2013) (citing *Estelle*, 429 U.S. at 103-04; *Arnett*, 628 F.3d at 752). Deliberate indifference can also occur where medical personnel continue a treatment that is known to be ineffective. *Id.* "A prison medical official is also deliberately indifferent if the official pursues a course of treatment based on cost rather than sound medical judgment." *Gulley v. Ghosh*, 864 F.Supp.2d 725, 729 (N.D. Ill. 2012) (citing *Johnson v. Doughty*, 433 F.3d 1001 at 1013 (7th Cir. 2006)). A delay of treatment can also constitute deliberate indifference, even if it is a delay of mere hours or days. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference.").

During his incarceration at Pinckneyville, Defendants demonstrated deliberate indifference to Plaintiff's Rheumatoid Arthritis and Ankylosing Spondolitis. Drs. Scott and Shah, along with the IDOC and Wexford, have repeatedly failed to effectively treat the severe pain and inflammation stemming from Plaintiff's Rheumatoid Arthritis and Ankylosing Spondilitis, as described in detail in Plaintiff's Amended Motion for Preliminary Injunction. (Doc. 86, pp. 8-9). While at Pinckneyville, Plaintiff also asked to be referred to a specialist to further assess these

10

conditions and determine whether surgery or an alternative form of treatment is necessary. Defendants ignored these requests, while at the same time failing to identify an effective pain medication – which likewise constitutes deliberate indifference. *See* Exhibit 3, Confidential report of Joann L. Reagan, May 19, 2017, p. 5-6 (opining that the failure to refer Plaintiff to a specialist for pain management after the IDOC physicians have been unable to effectively control his pain represents a substantial departure from accepted standards of medical care); *see also Berry*, 604 F.3d at 441 (finding that a jury could reasonably conclude that the prison's doctor knowingly adhered to an easier method to treat the plaintiff's pain that she knew was ineffective and finding that the physician's failure to identify an effective pain medication or refer the plaintiff to a specialist supported this conclusion); *Foster*, 4 F.Supp.3d 974 (granting inmate's motion for preliminary injunction to be evaluated by a specialist and receive treatment consistent with his or her recommendations and listing a litany of cases in which prisons have referred inmates to outside specialists for various conditions when the prison's treatment proved ineffective or had reached its limits).

Since Plaintiff's transfer to Dixon, he has been approved for a referral to a rheumatologist. See Exhibit 1, ¶ 18. See also, March 1, 2018 Approval for Rheumatologist evaluation, Doc. 131-1, p. 2. However, more than a month later, Plaintiff has not yet visited the rheumatologist for evaluation. See Exhibit 1, ¶ 18; Exhibit 2, ¶ 7. As at Pinckneyville, the IDOC and Wexford have demonstrated deliberate indifference to Plaintiff's serious medical needs since his transfer to Dixon by failing to provide Plaintiff with the approved rheumatologist referral.

Finally, the IDOC and Wexford continue to demonstrate deliberate indifference to Plaintiff's Rheumatoid Arthritis and Ankylosing Spondylitis by ignoring prior medical recommendations that Plaintiff be permitted to perform leg lifts with weights, back strengthening exercises, and other exercises for at least one hour per day to increase mobility, reduce pain, and

11

prevent future deterioration. *See* Exhibit 3, p. 7. These recommendations were made as early as the 1980's and, since that time, Plaintiff's Ankylosing Spondylosis and Rheumatoid Arthritis have only gotten worse. *Id.* Notwithstanding this prior recommendation and the fact that Plaintiff's conditions prevent him from doing many of the required exercises in a regular gym setting, Defendants refused to grant him regular access to a handicap-accessible and/or ADA-approved gymnasium while he was incarcerated at Pinckneyville. *Id.* He was also deprived of even regular access to the yard for exercise by virtue of being housed in the Segregation unit for no apparent reason. *Id.*; *Perez*, 792 F.3d at 778 (prison official's refusal to follow prior medical recommendations supported claim for deliberate indifference).

Since his transfer to Dixon, Plaintiff is still unable to perform his prescribed exercises. Plaintiff recognizes that Dixon does not have an ADA-approved gymnasium facility that would be suitable for his recommended exercises. In light of this, and seeking an alternative reasonable means to perform the doctor-recommended exercises, Plaintiff has requested that he be permitted ankle and wrist weights in order to perform strengthening exercises in his cell. Despite these requests, the IDOC and Wexford have not yet provided Plaintiff with a means to perform his prescribed exercises. Exhibit 2, ¶ 8. Exercise remains a critical aspect of Plaintiff's medical care. Exhibit 1, ¶ 20. In refusing to provide Plaintiff with ankle and wrist weights at Dixon, or similar alternative means to perform strengthening exercises in the absence of an ADA-compliant gymnasium, the IDOC and Wexford have continued the same deliberate indifference that was evident during Plaintiff's incarceration at Pinckneyville.

The physicians at Pinckneyville also demonstrated deliberate indifference to Plaintiff's Anterior Uveitis by failing to follow the recommendations of the Pinckneyville Ophthalmologist. This Ophthalmologist prescribed special eyeglasses with telescoping, magnifying, and tinted lenses to Plaintiff in 2006 to treat the photophobia caused by Plaintiff's Uvetis and to allow

Plaintiff to read.  Exhibit 3, at p. 3.  However, these eyeglasses were taken away from him in October 2015 for no apparent reason and were never returned to him.  *Id.*

Since being transferred to Dixon, the deliberate indifference has continued. Plaintiff was referred to a low-vision specialist, who prescribed Plaintiff telescopic eye-glasses and a variety of other assistive devices including 1) a video magnifier for printed material; 2) 10X binocular lenses for distance viewing; 3) permanently dark tinted lenses for glare; 4) a long walking cane; and 5) a talking watch or clock to treat and accommodate his anterior uveitis.  A copy of Dr. Russell's October 5, 2017 Recommendations is attached as Exhibit 4.  See also Exhibit 1, ¶ 13. Notably, Dr. Zahtz subsequently ordered that all of the low vision specialist recommendations be followed. Plaintiff requires these assistive devices for activities of his daily life, as well as to navigate his movement safely throughout Dixon's facilities.

Without the prescribed eyeglasses, Plaintiff is able to see only a shadow of an individual walking in front of him and is unable to read, study, or perform other daily tasks without significant difficulty.  Exhibit 3*,* p. 3, 7.  *Perez*, 792 F.3d at 778 (prison official's refusal to follow specialist's recommendation supported claim for deliberate indifference). To date, Plaintiff has received only the walking cane, and has not been provided with the other assistive devices recommended by the low-vision specialist and ordered by Dr. Zahtz. See Exhibit 2, ¶ 5. The IDOC's failure to provide Plaintiff with these items constitutes a substantial deviation from accepted standards of medical care. Exhibit 1, ¶ 14.

There is no apparent reason why Plaintiff should not be provided with the other glasses and assistive devices that have been prescribed. The IDOC has submitted that Plaintiff was denied the recommended video magnifier because a similar device was previously denied by the Dixon ADA Coordinator, Mr. Maxwell Blackburn when requested by another inmate in 2017. Transcript pp. 44-45. Mr. Blackburn testified that in 2017, it was determined that because the

video magnifier contained a camera component, it was deemed a safety request, and was therefore not a suitable accommodation for the inmate. Transcript pp. 44-45. Importantly, in making the determination regarding the video magnifier in 2017, the ADA coordinator was not permitted to access medical information inmate who requested the video magnifier. Transcript p. 47. That offender had utilized the video magnifier prior to his incarceration, and requested to be able to use it in the prison as well. *Id*. Mr. Blackburn was unable to testify as to whether that inmate had a medical prescription for the video magnifier. The instant case is different however, because the low-vision specialist expressly prescribed a video magnifier, and Dr. Zahtz approved this prescription. See Exhibit 4. Further, the IDOC has not presented any actual documentation or safety regulations to support its position that a video magnifier poses a safety risk. There are video magnifier models that do not capture images, but merely use the camera component to magnify. Exhibit 2, ¶ 5. Additionally, the IDOC's claims that the charger for the video magnifier poses safety risk are easily dispelled, as prisoners at various IDOC facilities have been given access to rechargeable tablets. Exhibit 2, ¶ 5.

Even if the IDOC had directed the Court's attention to a policy or practice prohibiting cameras in prisons, modification of an existing policy or practice well-recognized as a reasonable accommodation under the ADA. Indeed, modification of an existing policy or practice as a reasonable accommodation is built into the regulatory framework for Title II. 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."). For each of the foregoing reasons, Plaintiff is likely to succeed on his Eighth Amendment claim.

**B.   <u>Plaintiff is Likely to Succeed on the Merits of his Claims under the ADA and the Rehabilitation Act.</u>**

14

To state a claim under the ADA and the Rehabilitation Act, Plaintiff must allege that: "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Phelps v. Godinez*, 2015 WL 3534257, *4-5 (S.D. Ill. June 4, 2015) (citing *Jaros v. Illinois Dept. of Corrections,* 684 F.3d 667, 671 (7th Cir. 2012). "Refusing to make reasonable accommodations is tantamount to denying access . . . ." *Id.* Under the ADA and the Rehabilitation Act, "disability" is defined to include "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 794(a).

Each of Plaintiff's conditions qualifies as a disability under this definition. As discussed above, Plaintiff's Rheumatoid Arthritis and Ankylosing Spondylosis severely restrict Plaintiff's mobility and substantially limit his ability to walk, exercise, shower, and perform other daily activities. (Doc. 1, p. 5, 5.b). Plaintiff's Anterior Uveitis substantially limits Plaintiff's ability to see, read, write, walk, exercise, shower, and perform other daily functions. Finally, Plaintiff's hypertension substantially limits Plaintiff's ability to breath and exercise. *Id.*

It is well-established that showers and gymnasiums are considered "programs or activities" under the Rehabilitation Act. *Phelps*, 2015 WL 3534257, *5. A prison's services, programs, or activities for purposes of the ADA and the Rehabilitation Act also include recreational activities, educational programs, and medical services. *See e.g., Reaves v. Department of Correction*, 195 F.Supp.3d 383 (D. Mass. 2016) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 2010 (1998).

Defendants have repeatedly denied Plaintiff access to multiple prison facilities and/or programs by failing to accommodate his disabilities and failing to grant him access to handicap-accessible facilities. As discussed above, Plaintiff has been able to see little more than a shadow since Pinckneyville officials took his medically prescribed eyeglasses from him. Exhibit 3, at p.

15

7.  Considering this level of visual impairment, and the fact that Dixon does not have an ADA-compliant gymnasium facility on cite, Plaintiff requires wrist and ankle weights, or other alternative accommodation, so that he may safely perform strengthening exercises in his cell to prevent future deterioration and mobility problems. The low-vision specialist and Dr. Zahtz have both recognized Plaintiff's need for the prescribed telescopic eyeglasses and other assistive devices to see, read, write, and safely ambulate, however the system-wide practices and policies of the IDOC and Wexford stand in the way of Plaintiff receiving these medically necessary visual aids. Furthermore, in light of his numerous serious medical conditions, Plaintiff needs a one-man cell, or in the alternative an ADA-compliant two-man cell, to prevent serious injury that is likely to follow from any altercation, considering that Plaintiff is unable to defend himself.

The objectionable treatment Plaintiff experienced at Pinckneyville unfortunately continues since his transfer to Dixon as a result of policies and practices that span across all IDOC and Wexford facilities. The requested accommodations were denied while Plaintiff was incarcerated at Pinckneyville. These accommodations, all of which are reasonable and necessary to give Plaintiff equal access to the above-referenced facilities, are still being denied at Dixon. To date, Plaintiff has not received the visual aids prescribed to him, has not received weights or access to other means to perform his doctor-recommended exercises, and has not been place in a one-man, or ADA-compliant two-man cell assignment.

**B.      Plaintiff Has No Adequate Remedy at Law**

An injunction is warranted "only when the plaintiff has no adequate remedy at law, such as monetary damages." *Foster v. Ghosh*, 4 F.Supp.3d 974, 983 (N.D. Ill. 2013) (quoting *Boucher v. Sch. Bd. Of Sch. Dist. Of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998)). "Money hardly seems an adequate remedy for a significantly decreased life expectancy or for significant pain and suffering from increased symptoms." *Farman v. Walker*, 593 F.Supp.2d 1000, 1013 (C.D.

16

1717817.2

Ill. 2009). Until Plaintiff's conditions are treated, he will continue to be harmed by a lack of appropriate treatment.   No amount of money will compensate for Plaintiff's pain, suffering and decreased quality of life. Because Plaintiff has no adequate remedy at law, the second requirement for issuance of a preliminary injunction is satisfied.

> **C.**   **Plaintiff Will Suffer Serious Irreparable Harm Due to Defendants'
> Deliberate Indifference to his Medical Needs if the Preliminary Injunction
> is Denied**

Plaintiff will suffer irreparable harm where that harm "cannot be undone following the adjudication and a final determination of the merits of his underlying claim." *Foster*, F.Supp.3d at 983; *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("Only harm that the district court cannot remedy following a final determination on the merits may constitute irreparable harm.").   Unnecessary continued pain and suffering as well as exacerbation of symptoms have been considered forms of irreparable harm.  *Flynn v. Doyle*, 639 F.Supp.2d 987, 993 (E.D. Wis. 2009).

In the absence of a preliminary injunction, Plaintiff will continue to experience unnecessary pain and suffering – which is an irreparable harm.  Specifically, without the recommended referral to a specialist in rheumatology, Plaintiff will continue to experience significant pain from his Ankylosing Spondylitis and Rheumatoid Arthritis.  Without access to ankle and wrist weights in his cell, so that he can perform the exercises previously recommended, there is also a reasonable likelihood that these conditions will progress at faster rates, that his mobility will become more restricted, and that his resulting pain will continue to increase.  Exhibit 3, p. 7.

Without his previously prescribed eyeglasses and other recommended visual aids, Plaintiff will continue to be able to see little more than a shadow and will be unable to participate in educational programs at Dixon, or read, write, shower, or even walk without significant

17

1717817.2

difficulty.  *Id.*  Similarly, if Plaintiff is not transferred to a one-man or ADA-compliant two-man cell, he will continue to be in eminent risk of serious injury because he is unable to defend himself from altercation due to his disabilities.  *Id.* at p. 4.

      **D.**    **<u>The Balance of Hardships Weighs Strongly in Plaintiff's Favor; The Irreparable Harm that Plaintiff Will Suffer Without Injunctive Relief is Greater than the Harm the Opposing Party Will Suffer if the Preliminary Injunction is Granted</u>**

When the first three requirements for a preliminary injunction have been established, courts conduct a balance of hardships by weighing "the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou,* 549 F.3d at 1086.  A sliding scale approach is used, such that the more likely Plaintiff is to succeed, the less the balance need weigh in his favor.  *Planned Parenthood of Ind., Inc.*, 699 F.3d at 972.

Prisons regularly refer inmates to see medical specialists when the prison medical personnel are unable to provide adequate treatment. *Ackers v. Wexford Health Sources, Inc.*, 2015 U.S. Dist. LEXIS 98933 *15 (S.D. Ill. March 30, 2015). Even if referral to a medical specialist is a more costly option, this factor should not be determinative in the prison's decision in Plaintiff's treatment. As discussed above, "choosing a treatment for a prisoner based on cost and not efficacy is evidence of deliberate indifference." *Foster*, 4 F.Supp.2d at 984.  The interest in protecting Plaintiff's Eighth Amendment rights substantially outweighs any inconvenience, be it financial or administrative, that preliminary relief may impose on Defendants. The balance of hardships weighs heavily in Plaintiff's favor, and this fourth consideration for injunctive relief is satisfied.

      **E.**    **<u>Plaintiff's Requested Preliminary Injunction Will Not Harm the Public Interest</u>**

"The interest of the public, Illinois taxpayers, who would be paying the bill for any outside specialist, have a vested interest in ensuring that the constitutional rights of its citizens are protected." *Ackers* 2015 U.S. Dist. LEXIS 98933 *16; see also *Foster*, 4 F.Supp.3d at 984 (finding that "Illinois taxpayers have a vested interest in ensuring that the constitutional rights of its citizens are protected").   By granting Plaintiff's motion for preliminary relief, this Court's decision will serve the public interest.  The preliminary injunction sought by Plaintiff is essential for the protection of his constitutional rights.

### Conclusion

For all of the reasons stated above, and based on the facts presented to this Honorable Court via Plaintiff's Complaint (Doc, 1), Original Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 18), and Plaintiff's Declaration in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 18-1), Plaintiff's Amended Motion for Preliminary Injunction (Docs. 85 and 86), Plaintiff's Reply to Defendants' Response in Opposition to Plaintiff's Amended Motion for Preliminary Injunction (Doc. 96) and Plaintiff's Supporting Affidavit (Doc. 96-1), Plaintiff's Amended Complaint (Doc. 110), Plaintiff's Brief Addressing Medical Care and Housing Developments (Doc. 115) the, the  Affidavit of Nurse Case Manager (Exhibit 1), the Affidavit of Plaintiff Salik Abdullah (Exhibit 2), Report of Nurse Case Manager (Exhibit 3), and Dr. Russell's October 5, 2017 Recommendations (Exhibit 4), and all submitted by Plaintiff, Plaintiff respectfully requests that this Honorable Court enter a preliminary injunction in his favor, and set this matter for hearing, or for any other relief this Court deems just and appropriate.

19

Dated: April 20, 2018                        Respectfully submitted,

                                    GREENSFELDER, HEMKER & GALE, P.C.

                            By:  _/s/ Molly R. Batsch_____
                                    Molly R. Batsch, #6298227
                                    Audrie R. Howard, admitted pro hac vice
                                    10 South Broadway, Suite 2000
                                    St. Louis, MO  63102
                                    T: 314-241-9090
                                    F: 314-241-3643
                                    mrb@greensfelder.com
                                    ahoward@greensfelder.com

                                    *Counsel for Plaintiff*

1717817.2

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which electronically delivered a copy of the same to the following counsel of record:

Timothy P. Dugan
Carla G. Tolbert
Cassiday Schade LLP-St. Louis
100 North Broadway, Suite 1580
St. Louis, MO 63102
tdugan@cassiday.com
ctolbert@cassiday.com

**Counsel for Defendants Mark Scott and Vipen Shah**

Jason Adams
Office of the Attorney General-Springfield
500 South Second Street
Springfield, IL 62701
jadams@atg.state.il.us

**Counsel for Defendants Illinois Department of Corrections and Jacqueline Lashbrook**

*/s/ Molly R. Batsch*

21

1717817.2